UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                          CASE NO. 8:26-cr-101-KKM-SPF

ANN MARY ZHENG

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR CONDITIONS OF RELEASE**

On March 10, 2026, Alen Zheng planted an improvised explosive device

("IED") outside the Visitor's Center at MacDill Airforce Base. Ann Mary Zheng, the

defendant, is Alen Zheng's older sister. In the wake of Alen Zheng's crime, the

defendant destroyed evidence for him and helped him flee prosecution to the

People's Republic of China. The defendant now faces a two-count indictment for her

actions and she should be detained pending trial.

**PROCEDURAL HISTORY**

On March 25, 2026, a grand jury returned an indictment charging the

defendant with accessory after the fact in violation of 18 U.S.C. § 3 and evidence

tampering in violation of 18 U.S.C. 1512(c)(1). Federal Bureau of Investigation

("FBI") agents arrested her that day. She appeared before the Court on March 26,

2026, for her initial appearance and arraignment. Doc. 9. The United States moved

for the defendant's pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(2)(A) and (B)[1]

---

[1] Section 3142(f)(1)(A) provides that the government may move for detention "in a case that involves a crime of violence[.]" The offense with which the defendant is charged need not be

and argued that the defendant posed a serious risk of flight and obstruction of justice and that no condition or combination of conditions will reasonably assure her appearance. The defendant elected to proceed with the detention hearing on March 26, before later requesting it be continued for her to obtain accurate information on her properties and financial situation. The Court continued the hearing to March 31, 2026.

On March 30, 2026, the defendant filed, under seal, a motion to set reasonable conditions of pretrial release. Doc. 17. The next day, at the continued detention hearing, the Court gave the United States the opportunity to respond to the defendant's motion in writing by April 3, 2026.

### **ARGUMENT**

"If, after a hearing pursuant to [section 1342(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial." 18 U.S.C. § 3142(e). The United States must show by a preponderance of the evidence that a defendant should be detained pending trial because he or she poses a high risk of flight. *United States v.*

---

a crime of violence, as long as there is nexus between the charged offense and violence. *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992). Here, the defendant is charged with accessory after the fact for assisting her brother following his commission of a crime of violence (attempted bombing of federal property under 18 U.S.C. § 844(f)(1)); that her brother committed his crime is a necessary element the United States must prove to convict the defendant under 18 U.S.C. § 3. There is a Circuit split on this issue, however. *See United States v. Watkins*, 940 F.3d 152, 164 (2d Cir. 2019) (rejecting the "interpretation of the word 'involves' in § 3142(f)(1) as permitting consideration of related, but uncharged, conduct.").

2

*Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985). The Court must consider the statutory factors set forth in 18 U.S.C. §§ 3142(g)(1)-(4), in light of the facts, to determine whether there are release conditions that will reasonably assure the defendant's appearance and the safety of any other person and the community.

**A. The nature and circumstances of the offense charged**

The defendant's brother committed serious, dangerous, and violent crimes. He built an IED, planted it at a building at MacDill (that is meant to welcome visitors including civilian) on the evening of March 10, 2026, and lit the fuse. The defendant covered up her brother's crimes and helped him in his effort to get away with it.

Records obtained pursuant to a subpoena to Expedia show that on March 11, 2026 "Annmary Zheng" bought airplane tickets for herself and Alen Zheng to China. The defendant accompanied Alen Zheng to China, presumably to guarantee he arrived without encountering law enforcement intervention. Evidence from the defendant's cellphone[2] revealed she researched ways to secure Alen Zheng's admission to China and ensure his success there. On March 11, 2026, she asked ChatGPT, "how to get a full [C]hina visa in [H]ong [K]ong," "this is for my brother," "can he transfer to a college or university in [C]hina," "what are some good colleges in [C]hina Fuzhou," and "how long can [a U.S.] citizen stay in

---

[2] The defendant has consented to a search of her cellphone.

[C]hina?" While China is the defendant's parents' home country, it is also a country from which the United States cannot extradite.

On March 17, 2026, the defendant returned to the United States from China. She first entered the United States in Detroit. There, Customs and Border Protection ("CBP") conducted a secondary inspection. The defendant suggests that CBP questioned her about the IED and her involvement in the coverup and that her subsequent return to Tampa is then evidence against her risk of flight.

But CBP did not ask the defendant about the IED, MacDill, or her involvement. CBP inquired about her last-minute decision to buy plane tickets to China. The defendant claimed she took Alen Zheng to China "to stay with their grandparents" because he had disagreements with their parents and needed "dental work." There was no indication the defendant was under investigation.

The defendant also tampered with a key piece of evidence. Alen Zheng drove the defendant's black Merecedes GLK 350 to buy at least some components he used to build the IED and transport the completed IED to the Visitor's Center. Surveillance video shows Alen Zheng drove that vehicle to a Best Buy store from which he purchased a burner phone used in commission of the crime. The FBI ultimately found the burner phone receipt and a receipt for two two-liter Cherry Pepsi bottles inside the vehicle; Alen Zheng used the bottles to house his IED. Perhaps most importantly, surveillance video shows that on March 10, 2026, Alen Zheng drove the IED to MacDill in the trunk of the vehicle.

4

On March 11, 2026, presumably concerned about law enforcement searching the vehicle's infotainment system, the defendant asked ChatGPT, "is there a way to track a 2010 [M]ercedes glk350?" The next day, the defendant sold the vehicle to CarMax for $5,000, as reflected in the bill of sale and CarMax surveillance video. FBI agents located the vehicle and seized it pursuant to a warrant on March 19, 2026. They observed the carpet in the trunk of the vehicle had striations consistent with it having been recently vacuumed. Notwithstanding that, agents still found residue in the carpet visually similar to the material inside the IED. CarMax confirmed to the FBI that it had not cleaned the interior of the vehicle since purchasing it on March 12, 2026.

By planning and executing Alen Zheng's escape, the defendant frustrated this Court's ability to exercise its power in the case against Alen Zheng. She also hindered law enforcement's ability to investigate a serious, violent crime. Had Alen Zheng remained in the country, agents could have questioned him in an effort to learn valuable information, including whether he had built other devices and the identities of conspirators, if any.

**B. The weight of the evidence against the defendant**

As described in detail above, the evidence against the defendant consists of video surveillance, documents, and the contents of her cellphone. Additionally, during a consensual interview with FBI agents at the Tampa International Airport on March 18, 2026, the defendant said Alen Zheng had admitted to her on March 11, 2026, that he had planted the bomb at MacDill. By her own admission, the

5

defendant was fully aware of her brother's crime before she helped him flee and sold the black Mercedes GLK 350.

The defendant faces a maximum penalty of 30 years in prison. Given the prospect of significant federal prison time, the strength of the evidence provides incentive for the defendant to flee.

## C. The history and characteristics of the defendant

Relevant to the assessment of the defendant's history and characteristics are "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The defendant is well educated. She reported to Pretrial Services that she is in good physical and mental health and does not use drugs or alcohol. She has no criminal history.

The defendant's family ties, community ties, and financial resources all weigh in favor of detention. The defendant's mother and father are Chinese citizens and nationals who never acquired legal status in the United States. On March 18, 2026, Immigration and Customs Enforcement's Enforcement and Removal Operations ("ICE ERO") took them into custody. They both have final orders of removal pending. According to a Department of Homeland Security Form I-213 for the defendant's mother, she will "remain in custody pending removal." The United States therefore expects that they will be removed from the country and deported to

China. Alen Zheng in presently in China. The defendant told CBP that her grandparents are in China.

In the defendant's phone, agents found photographs of a form entitled "Accommodation Registration Form for Person's From Abroad" for Alen Zheng. In the form, Alen Zheng identified as a Chinese national and noted that he would be staying at a home owned by the "Zheng Fuming" family Fujian Province. According to the form, he would be permitted to remain in China until March 25, 2028. Also in the defendant's phone was a photograph of the following Chinese travel document:



The FBI and CBP reviewed Passenger Name Records ("PNR") for the defendant and Alen Zheng related to their trip to China. A PNR is a digital record in an airline's computer reservation system that contains the itinerary for a passenger or a group of passengers traveling together. Alen Zheng's PNR contained two numbers of interest—his U.S. passport number and the red number listed on the top-right corner of the Chinese travel document depicted above. The defendant's PNR also

contained her U.S. passport number and a number (ending in 6862) believed to be a Chinese travel document number. The defendant's PNR indicates the document bearing the number ending in 6862 will expire on April 3, 2027. The United States thus believes the defendant has a Chinese travel document that would permit her entry into China.

In the defendant's mother's phone[3], agents found voice messages about Alen Zheng's documents. On March 15, 2026, the defendant's mother sent her multiple voice notes[4] over WeChat:

> Beibei's [Alen's] travel document has expired, but that really doesn't mean anything. As long as it's still within its validity period, he can travel abroad. The purpose of the travel document is simply to allow him to leave the United States and go to another country. It's a travel document because, normally, as U.S. citizens, you just need a passport to travel overseas. But Beibei isn't considered a full U.S. citizen, so he has to use this travel document instead. Therefore, the fact that his travel document has expired isn't particularly important.
>
> Because this travel document essentially functions as a passport, there's no six-month limit to worry about. Since he's an adult, he can stay in China for any length of time—two years, three years, whatever; the six-month concept simply doesn't apply. After, say, one year, two years, or three years, if he wants to return to the United States—he's an American citizen—Chinese customs will require him, at exit, to present an "exit certificate" (出境证), not an "exit card."
>
> When the time comes, go to the local police station and show them this travel permit. Make sure you keep that travel permit safe—it's the document that proves his identity, and his passport is only valid when

---

[3] The defendant's mother consented to a search of her cellphone.
[4] The voice notes were machine translated.

it's paired with this permit. So protect the travel permit at all costs. If, a year, two years, or even three years later, he wants to return to the United States, he just needs to go back to the police station to obtain an exit certificate, and then he'll be able to go back to the U.S. again.

This travel document and the exit permit are actually the same thing—it's just an auxiliary passport. The travel document is only valid for two years. If he has been in China for three years, that travel document won't work either; he'll have to get an exit permit. In other words, it's called a travel document when you're leaving the United States, and it's referred to as an exit permit when you're trying to enter the United States.

While you're handling all of this, first let Beibei do it on his own, staying nearby only to point out where he might need help and to let him try it himself. Also play the messages Mom left for you and let Beibei hear them, so he can see the entire process. In our case, the problem with the sister's little bow comes down to his everyday behavior—he just doesn't do anything and has no sense of how things start or progress, lacking any feeling of personal agency or willingness. What we need to do is help him develop that mindset.

According to the U.S. State Department's website,

China does not recognize dual nationality. Entering on a Chinese-issued travel document (台胞证 taibaozheng or 旅行证 luxingzheng) or possession of valid Chinese identity documents (身份证 shenfenzheng or 户口本 hukouben) impedes the U.S. government's ability to provide consular services in case of exit ban, detention, or disappearance.

If you are a U.S. citizen and choose to enter Mainland China on travel documents other than a U.S. passport and are detained or arrested, the PRC government may not notify the U.S. Embassy or the U.S. Consulates General or allow consular access.

*See* U.S. Department of State, China, Tips from the U.S. embassy, https://travel.state.gov/en/international-travel/travel-advisories/china.html (last accessed April 3, 2026).

The defendant asserts that her community ties will prevent her flight. Her parents bought her three properties within the Middle District of Florida which are deeded in her name. Publicly available property records show the first property was purchased in May 2019 for approximately $87,000. Two years later, the defendant took out a 15-year mortgage on the property in the amount of $123,600. The second property was purchased in January 2021 for $115,000. That property is unencumbered. The third property was purchased in June 2021 with a mortgage. The purchase price was approximately $365,000 and the 30-year mortgage was in the amount of $237,250, meaning the Zhengs paid approximately $128,000 in cash at closing. These properties are rented to tenants.

The defendant argues that her obligation to collect rent from the tenants and pay the mortgages shows that she will not flee the district. But the defendant can certainly collect this passive income and pay the mortgage through electronic means from anywhere in the world—including China. The fact that properties are deeded in her name is similarly unpersuasive. County records show that Alen Zheng was the sole owner of one property and a co-owner of the Zheng's family residence, which did not thwart his flight. The defendant's phone contained the following queries she made to ChatGPT on March 11, 2026: "he has houses under his name, does he need to sign power of attorney or transfer them first;" "How to do power of attorney the fastest;" "Would it be better for him to transfer all the property to my name;" "What

10

if he transfer[ed] it to LLC;" "What if the LLC is under my name." The defendant sought ways for her brother's assets to remain safe in their family and she can do the same with her own properties. Indeed, by transferring title or granting a family member power of attorney, the defendant could have the assets liquidated and the funds transferred to her without being in the Midde District of Florida.

Employee wage information maintained by the Florida Department of Revenue shows that since the second quarter of 2021, the most the defendant's father reported earning in a quarter was $15,000 and the most her mother reported was $4,500. Given their earnings and the amount of money they spent on the properties, it is possible the defendant's family has financial resources of which the United States is unaware. Additionally, the defendant reported to Pretrial Services that she works part-time as a cashier at her family's Chinese restaurant and earns rental income from the three properties. The defendant reported to both CBP and the FBI that she works as a day trader, which she did not disclose to Pretrial Services.

The defendant has substantial foreign ties and has access to funds to finance her flight from the jurisdiction. By helping her brother flee and tamper with evidence only a few weeks ago, the defendant has demonstrated her intent to do the same now that her freedom is at stake. "Assessment of the flight risk posed by a defendant often implies a calculation of the relative cost of remaining and submitting to trial or, in the alternative, fleeing the jurisdiction." *United States v. Megahed*, 519 F. Supp. 2d 1236, 1242 (M.D. Fla. 2007). Here, there is a substantial risk the defendant will join

11

her immediate family members in China, rather than facing trial for the charges for which the United States has ample credible evidence.

THEREFORE, the United States requests that this Court detain the defendant pretrial.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    /s/ Lauren Stoia
Lauren Stoia
Assistant United States Attorney
United States Attorney No. 201
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Lauren.Stoia@usdoj.gov

**U.S. v. Ann Mary Zheng**                    **Case No. 8:26-cr-101-KKM-SPF**

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Defense Counsel of Record.

/s/ *Lauren Stoia*
Lauren Stoia
Assistant United States Attorney
United States Attorney No. 201
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Lauren.Stoia@usdoj.gov

13